Warren W. LIBBY

v.

Mary Merrill LORRAIN et al.

Supreme Judicial Court of Maine.

Argued May 4, 1981.

Decided May 28, 1981.

Bowie & Matthews, Kim Matthews, Portland (orally), for plaintiff.

Allison Morrill, Portland (orally), for Mary Merrill.

Kenneth Cole, Portland, for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, ROBERTS and CARTER, JJ.

**McKUSICK, Chief Justice.**

This partition action seeks to disentangle the property involvements of an unmarried man and woman who bought a house as joint tenants and made their home there with their young daughter for fifteen months prior to his moving out. On the man's complaint the Superior Court (Cumberland County) ordered that the real estate be sold and that the proceeds, net of an outstanding mortgage, be divided equally between the joint tenants. The woman appeals, asserting that she should be given an opportunity to buy out the man's share and that she is entitled to receive more than half of the sales proceeds because of improvements and mortgage payments she has made. We find, however, that she demonstrates no error in the Superior Court's determinations and we accordingly affirm its judgment.

Plaintiff Warren Libby and defendant Mary Merrill Lorrain hold legal title as joint tenants to a five-room house located on a 140-by-180 foot lot in Falmouth. They bought the real estate on August 30, 1977, for $13,000. They obtained the entire purchase price from a mortgage loan granted them by a savings and loan association. On the basis of Libby's status as a veteran, that mortgage loan bore the guarantee of the Veterans Administration. Mrs. Lorrain has made all mortgage payments.

Libby, Mrs. Lorrain, and their child lived together at the Falmouth house from the date of purchase until December 3, 1978, when Libby on his own volition moved out. He commenced this partition action the following August. Mrs. Lorrain has lived in the house continuously since its purchase in August, 1977. Their minor child lived with her until Libby gained legal custody of the child about a year after he moved out. Subsequently, defendant married Robert Lorrain, who with his three children has lived with her in the Falmouth house since late 1979.

After hearing, the Superior Court justice ordered sale of the joint tenancy real estate, satisfaction of the mortgage, and distribution of the net proceeds to the joint tenants in equal shares. In his order the justice made no findings of fact, and neither party made a request for findings as is authorized by M.R.Civ.P. 52(a). In these circumstances, we must consider Mrs. Lorrain's appeal on the assumption that the trial justice found for Libby on all factual issues necessarily involved in the decision, and the findings thus assumed to have been made will not be set aside by this court unless shown to be clearly erroneous. *See Farrelly v. Town of Deer Isle*, Me., 407 A.2d 302 (1979).

Our present statutes, 14 M.R.S.A. §§ 6502–25 (1980), preserve the statutory remedy of "partition by petition"[1] that was

---

1. The direct ancestry of 14 M.R.S.A. §§ 6502–25 to the 1821 statute providing for "partition by petition" is most easily seen by comparing the immediate predecessor of our present re-

made available—as a simpler alternative to the ancient writ of partition—to joint tenants and tenants in common immediately after Maine achieved statehood. *See* Laws of 1821, ch. 37. *See Hanson v. Willard*, 12 Me. 142 (1835) (history of partition statute). Statutory partition may be carried out only by physical division of the jointly owned real estate or perhaps, as suggested in *Hanson, supra* at 147–48, by a time-sharing of its use. Furthermore, statutory partition is subject to specially prescribed procedural rules, providing, for example, an interlocutory order entered on a jury's verdict, if a jury is demanded, *Allen v. Hall*, 50 Me. 253 (1861), that identifies the parties' interests to be set off and appoints commissioners to divide the real estate physically into specified shares. *See, e. g.*, 14 M.R.S.A. §§ 6508, 6511–13, 6521.

■ Partition is also available to joint owners of real estate through the equity jurisdiction of the Superior Court. Under an express grant of equity jurisdiction, first enacted in R.S.1857, ch. 77, § 8, cl. 6, our court of general trial jurisdiction has the power "[i]n cases ... between ... part owners of ... real ... property to adjust all matters ... between such part owners, compel contribution, make final decrees and enforce their decrees by proper process ...."[2] 14 M.R.S.A. § 6051(7) (1980). Equitable partition is more flexible in its procedure than "partition by petition" and is not limited to a physical division and may be carried out by sale, as statutory partition

may not be, and it is free of any special and restrictive procedures laid down by statute. *See* R. Whitehouse, *Equity Jurisdiction, Pleading and Practice in Maine* § 103 (1900). As the treatise writer has said, "our courts have held full jurisdiction in equity in cases of partition ever since 1857 *concurrent and elective* with the common law jurisdiction in the case of real estate by petition for partition given by [14 M.R.S.A. § 6502], even though the latter may be adequate ...." (Emphasis added) *Id.* at 115. By his complaint in the case at bar plaintiff Warren Libby, by asking alternatively for partition by physical division or by sale, clearly invoked the Superior Court's equity jurisdiction.

■ The equity court will order sale and division of the proceeds where physical division is impractical or would materially injure the rights of the parties. *See Williams v. Coombs*, 88 Me. 183, 33 A. 1073 (1895); II A. J. Casner, ed., *American Law of Property* § 6.26 at 113–14 (1952). Plainly, the court below concluded that the jointly owned real estate could not be physically divided without injuring one or both of the parties; and defendant Mary Lorrain does not question the inevitability of that conclusion. However, she contends that the court should have set over the entire real estate to her upon the condition that she pay to Libby the value of his share therein. It is true that both general equity principles, *id.* § 6.26 at 112–13, and our partition statute, 14 M.R.S.A. § 6515, *permit* the Superior

vised statutes, R.S.1954, ch. 176, § 2–27, with Laws of 1821, ch. 37. Although the modifications made by P.L.1959, ch. 317, § 358 *et seq.*, to conform the statutes to the then new Rules of Civil Procedure tend to obscure the historical origins of statutory partition, those changes were largely verbal. *See* Field & McKusick, *Maine Civil Practice* 672 (1st ed. 1959).

2. As first enacted in chapter 77 of the 1857 Revised Statutes, the pertinent provision read in full as follows:
    Sec. 8. It [the Supreme Judicial Court] has jurisdiction as a court of equity ...
    *Sixth.*—In cases of partnership and between part owners of vessels and of other real and personal property, for adjustment of their interests in the property and accounts respecting it.

Nothing in the revisor's report suggests that we should reject the normal meaning of the comprehensive term "part owners" as including joint tenants, as well as tenants in common. *See* E. Shepley, Report of the Commissioner Appointed to Revise the Public Laws of the State of Maine 5 (1856). If any doubt on that score existed, it was in any event rendered irrelevant by the 1874 grant to the Supreme Judicial Court of "full equity jurisdiction according to the usage and practice of courts of equity." P.L.1874, ch. 77, § 5(10), now 14 M.R.S.A. § 6051(13) (1980). Courts of equity have traditionally exercised the power to partition real estate held by joint tenants. *See* J. N. Pomeroy, *Equitable Remedies* § 2131 at 4796 (2d ed. 1919).

Court to order a partition in that manner. On the facts of the case at bar there would be much to impel the trial court to follow that course: Mrs. Lorrain would continue to live in the house where she has made her home for nearly four years; she would retain the benefits of an 8½% mortgage interest rate; and both she and Libby would save the expense that will be incurred in selling the property to a third person. Nonetheless, the Superior Court had no choice but to reject that alternative mode of partition. Mrs. Lorrain failed to show that she had the financial capacity to arrange to have Libby discharged from the mortgage obligation and to pay him an amount equal to one half of their equity in the property. Without Mrs. Lorrain's being able to carry out her side of a "partition by buy-out," the court could not equitably honor her request.

■ Finally, Mrs. Lorrain contends that before the net proceeds of any sale are divided equally between herself and Libby, she should be paid "the amount by which the value of the property was increased by improvements made through [her] efforts" plus an amount equal to the mortgage payments that she has made. Again, it is true that under appropriate circumstances the court of equity should order that she get credit for those amounts, in recognition of the principle that "he who comes into equity for relief [as has Libby in seeking partition] must do equity." "Since partition finally settles the relation existing between the cotenants [as to the jointly owned property], all equities growing out of that relationship are finally adjusted by the final decree." A. J. Casner, *supra* at 117. The equity power granted by 14 M.R.S.A. § 6051(7) extends "to adjust[ing] all matters ... between such part owners." In distributing the sales proceeds, any amounts a co-owner has expended in repairs or improvements, *Williams v. Coombs, supra* 88 Me. at 186, 33 A. at 1076, or paid on a joint and several debt, *cf. Bragdon v. Worthley,* 155 Me. 284, 153 A.2d 627 (1959), may be taken into account along with all other relevant equitable considerations.

■ On the facts of the case at bar, however, the finding we must assume was made by the Superior Court justice, namely, that the equities were evenly balanced between the parties, is amply supported against a "clearly erroneous" attack. Any full accounting must take into consideration any contributions made by either Mrs. Lorrain or Libby. *See* A. J. Casner, *supra* at 117. The couple was originally able to purchase the real estate with no down payment and an advantageous mortgage interest rate only by virtue of the fact that Libby qualified for the V.A. loan guarantee. Although Mrs. Lorrain has made all the monthly mortgage payments—each in the amount of $156.16 until February 1979 and $182.00 thereafter—there are offsetting equities in Libby's favor. While he lived at the jointly owned house, Libby "paid everything else" besides the mortgage installments, and he testified that his expenditures involved $350 to $400 per month. After moving out he continued for a time to pay some of the household expenses, including a fuel oil bill, and also repaired the roof. The evidence does not completely quantify the expenses paid by Libby or the value added by his roof work. The only improvements for which Mary claims credit were insulation and storm windows installed by and at the expense of a federally funded assistance program. Throughout the period since Libby moved out in December 1978, Mrs. Lorrain has had exclusive use of the house and has since late 1979 used it to provide there a home for her husband, Mr. Lorrain, and her three new stepchildren.

On all the evidence before him, the Superior Court justice was well justified in concluding that in equity Mrs. Lorrain has no greater claim than Libby to the proceeds to be realized from selling the jointly owned real estate.

The entry will be:

Judgment affirmed.

All concurring.