STATE OF MAINE                    SUPERIOR COURT
HANCOCK, SS.                      DOCKET NO. CV-14-59


SUSAN ARTHUR                  )
    Plaintiff                )
                             )
                             )
    v.                       )    DECISION,  JUDGMENT &
                             )    DECREE
                             )
ADAM FRONCZAK                 )
    Defendant                )


## PROCEDURAL BACKGROUND

The complaint and counterclaim in this matter was the subject of a three-day bench trial presented during the July 2018 civil trial term. During the trial, the Court heard testimony from each of the parties, as well as from numerous additional witnesses.  Subsequent to the trial, counsel for both parties filed written closing arguments and reply briefs for the Court's further consideration.


## FACTUAL BACKGROUND

At the outset, the Court would note its' considerable concern regarding the credibility of the testimony of each of the parties in this case. Nonetheless, based upon the evidence presented, the Court makes the following factual findings.

The parties have been engaged in a long-term relationship over the course of several years, but were never married. They are the parents of four children who were born to them during the course of that relationship. As of the time of trial, three of the four children had become adults.[1]

During the course of their time together, specifically in 1998, the parties acquired a parcel of real property located at 236 Mud Creek Road in Lamoine, Maine. The 28 acre parcel includes a residential building, a stable, pastureland and a riding arena which was built by the parties in 2005. An appraisal of the parties' property determined that the highest and best use of the property was its continued use as a property that supports the operation of a horse boarding and rider training business.

In the Fall of 2004, the parties formed a limited liability company, Iron Slipper Farm, LLC. The Court finds that the Plaintiff held 51% ownership and the Defendant held 49% ownership in the LLC. Prior to August 2011, both parties performed significant functions associated with the operations at the property which helped to produce income for the parties. The Plaintiff provided riding instruction for customers and boarding care for the horses at the stable and arena. The Defendant performed various maintenance activities, provided some assistance with horse feeding, and was primarily responsible for the haying operations on the property.

---

[1] A separate family matter proceeding remains pending in the District Court (Ellsworth District Court FM- 11- 305). Any Judgments or Orders, financial or otherwise, rendered in that matter are not intended to be impacted by this Decision and Judgment.

Although Iron Slipper Farm, LLC was formally established in 2004, the Court was provided with little evidence as to that entity's assets, income production, value or formal functioning especially since the time of the parties physical separation from one another in 2011. No tax returns have been filed for Iron Slipper Farm, LLC since 2011. Nor did the evidence from either party suggest that any of the assets described during the trial were assets owned by the limited liability company. The Court finds that the entity has ceased functioning and has no assets or liabilities requiring further division or consideration by the Court.[2] To the extent additional formalities are required to formally terminate or dissolve the limited liability company, the parties are hereby ordered to execute any such necessary documentation.

For a long period of time prior to the summer of 2011, the parties' relationship had deteriorated to the point where there were frequent and often heated arguments. In the summer of 2011, the plaintiff filed a complaint for protection from abuse in the Ellsworth District Court. (PA-11-206). On August 24, 2011 the District Court issued an order, by agreement of the parties and without a formal finding of "abuse". (Plaintiff's Exhibit 6). That Order, in part, granted the plaintiff possession of the parties' real estate at 236 Mud Creek Rd. The plaintiff has continued to have possession of the same property since that time through the time of trial.

Although the income from the horse-related operations at the parties' property significantly declined after August 2011, the Court does not find

---

[2] The business established by the Plaintiff after the parties' separation and currently operating as Iron Slipper Equestrian Center is not a distinct asset which is the subject of either equitable partition or dissolution.

3

that the Plaintiff intentionally attempted to devalue the property or minimize the income from the business operations on the property. After August 2011, the Defendant was not assisting, either through labor or financial contributions, in the business operations, and thus it is not surprising that there would be a decline in income. Moreover, the Court finds that it was reasonable for the Plaintiff to seek additional jobs, apart from the horse-related operations, in an attempt to supplement her income during this post 2011 period.

At no time after August 2011 has the Plaintiff made any payment to the Defendant reflecting any revenue from the horse-related business operations on their property. At no time since August 2011 has the Defendant made any payment either to the Plaintiff or directly to the creditors for any mortgage or other expense relating to the horse-related business operations on the property. Since August 2011, the Plaintiff has made all of the mortgage payments relating to the two mortgages encumbering the parties' property at 236 Mud Creek Rd.

Based on the testimony of Todd Christiansen, the representative from the mortgagee, Machias Savings Bank, the loan payments were current as of the time of trial. Moreover, Mr. Christiansen testified that the Plaintiff, the party with whom he had worked exclusively over the last six years, appeared to be a good customer and one his company would be able to work with in an attempt to refinance the property.

Although there was a significant amount of testimony and other evidence regarding various financial aspects of the cost associated with

4

building an arena on the property, operating a horse boarding business, the income one might anticipate from such an operation, and finally the estimated value of a speculative subdivision of the parties' property, the Court was presented with very little evidence of the current fair market value of the parties' real property. A formal appraisal of the property (Plaintiff's Exhibit 13.1 and hereinafter referred to as "the Moore Appraisal") was completed as of April 3, 2012, but never updated by either party. The Moore Appraisal determined the value of the parties' property to be $384,000 as of April 3, 2012. The Moore Appraisal noted that the tax assessed value of the property at the time was $353,200. Based upon the Moore Appraisal, and the description of the improvements that have been made to the residential building since the time of that earlier appraisal, the Court finds that the current fair market value of the property with its existing improvements is $400,000.

At or about the time of the parties' separation in September 2011 the outstanding balance on the loans encumbering the parties' property was $291,752.05. Based upon an estimate of the fair market value of the property at or about that time in the amount of $384,000, the parties had equity in the property at the time of their separation in the amount of $92,247.95.

As noted above, since the time of the parties separation in late August 2011, the Plaintiff has continued to consistently make mortgage payments on the outstanding loans such that the outstanding balance of the two mortgage loans as of June 2018, near the time of trial, was $176,484.71. Based upon the Court's finding of the current fair market value of the property in the amount of $400,000, the current total equity in the parties' property as of

5

June 2018 is $223,515.29. This figure represents an increase in the equity in the property in the amount of $131,267.34 since the time of the parties' separation.

The testimony from the parties has also described various items of personal property or assets owned by the Plaintiff and Defendant. That personal property includes vehicles, farm equipment, horses, boats, fishing gear, motors and anchors. Evidence as to the current fair market value of these various items is again seriously wanting. Plaintiff's Exhibit 33 and 33.1 includes an estimate of the value of some of these items in 2015. The evidence also suggests, however, that some of the vehicles in the possession of the parties may be encumbered by outstanding loans. Nonetheless, based upon the totality of the evidence available to the Court, the Court concludes that an order assigning to the Plaintiff the vehicles, horses, farm equipment, and furnishing in the buildings located on the parties' real property, and an assignment of the boats, fishing gear, lobster traps, motors and anchors to the Defendant would represent an equitable allocation of the parties' personal property items. The party assigned any particular item shall be responsible for any liability associated with any such item.

The testimony presented by each of the parties provided, in some significant detail, the personal difficulties the parties were having with respect to their relationship. In particular, the parties described various events which occurred in Maine and elsewhere which ultimately led to the filing of the protection from abuse complaint and the parties' permanent physical separation in August 2011.

6

The evidence presented by the Plaintiff has not persuaded the Court that the Defendant physically harmed the Plaintiff. The court does not find that the incidents which were described, either individually or in combination, constituted conduct by the Defendant which was so extreme and outrageous as to exceed all possible bounds of decency. Moreover, although the Plaintiff testified that the Defendant's conduct toward her caused her distress and anxiety, the Court does not find that the Plaintiff suffered severe emotional distress caused by the Defendant.[3] Finally, the Court does not find that the nature of the relationship between these two parties created the legal "special relationship" necessary to impose liability based upon a legal duty to act reasonably to avoid causing emotional harm.

## ANALYSIS

The Plaintiff filed an eight count Complaint raising claims of intentional infliction of emotional distress (Ct. 1), negligence (Ct. 2), negligent infliction of emotional distress (Ct. 3),unjust enrichment (Ct.4), conversion (Ct. 5), statutory partition of real estate (Ct. 6), equitable partition (Ct. 7) and shareholder dissolution of Iron Slipper LLC (Ct. 8). The Defendant filed a Counterclaim raising claims of breach of fiduciary duty

---

[3] The Court makes these findings notwithstanding the formal diagnosis presented by the Plaintiff's expert witness, Jody Gillen-Worden, LCSW. The course of the Plaintiff's treatment with her social worker suggests a number of sources of her anxiety and distress both before and after the incidents experienced with the Defendant leading to their August 2011 separation.

(Ct.1), conversion (Ct. 2), unjust enrichment (Ct. 3), intentional infliction of emotional distress (Ct. 4), negligence (Ct. 5), and negligent infliction of emotional distress (Ct. 6). Based on the findings set forth above, the Court concludes that neither party carried their respective burden of proof with respect to any of their respective claims other than the claim seeking an equitable partition of the parties' property. Accordingly, Judgment will be rendered in favor of the Defendant as to Counts one, two, three, four, five, six, and eight of the Complaint, and Judgment will be rendered in favor of the Plaintiff/Counterclaim Defendant with respect to Counts one, two, three, four, five and six of the Counterclaim.

Equitable Partition

The authority of the Superior Court to address and order the disposition of parties' property pursuant to an equitable partition has been addressed in numerous decisions of the Law Court, including *Libby v. Lorrain, 430 A.2d 37 (Me. 1981)* and *Ackerman v. Hojnowski, 2002 ME 147*. Specifically, in accordance with its equity power, the Court may order the sale of the property at issue, may assign the property to one party and require that party to pay a sum of money to compensate the other party for his share in the property, and may adjust all equities growing out of that relationship as to the jointly owned property.

As noted above, the parties had acquired equity in their real property assets prior to the time of their separation in 2011. Specifically, as of that time, the equity value of the property was approximately $92,250. The Court

8

concludes that the parties were entitled to share equally in the value of that equity as of the time of their separation.

Since the time of their separation, the defendant has failed to contribute, in any way, toward the expenses, maintenance or upkeep of the parties' property at 236 Mud Creek Rd. This failure to contribute is reflected, in part, by a Judgment rendered in favor of the Plaintiff, in the matter PA-11-206, in the principal amount of $10,109.46. Because the plaintiff has continued to shoulder 100% of the responsibility for maintaining the property, and more importantly, paying the outstanding mortgage liability[4], it is appropriate for the Court to recognize this and apportion to the Plaintiff 100% of the increase in the value of the equity since the time of the parties' separation. (Approximately $131,300 in value based upon the findings set forth above).

However, to allow the plaintiff to receive 100% of the increase in the equity value of the property since the time of separation and to allow her to recover payment of the Judgment rendered in PA-11-206, would result in an inequitable "double dipping". Both the prior judgment and the decision to allocate all of the value of the increase in the equity to the Plaintiff is based upon the Defendant's lack of direct payments. Failing to acknowledge this and allowing the plaintiff to receive 100% of the increased equity and payment of the existing judgment from the of the matter would result in a "double recovery" for the same failure on the Defendant's part.

---

[4] There was a great deal of evidence suggesting the Plaintiff has borrowed significant funds from a variety of sources other than Machias Savings Bank to assist her in keeping the mortgage payments current. The Court, as part of the equitable considerations in this Order, assigns the responsibility for any such debt to the Plaintiff.

9

As the Law Court noted in *Libby*, when citing to *II A.J. Casner, ed.,*
*American Law of Property*,

> since partition finally settles the relation existing between the
> cotenants [as to the jointly owned property], all equities
> growing out of that relationship are finally adjusted by the final
> decree. The equity power granted by 14 M.R.S.A. §6051 (7)
> extends to "adjusting all matters . . . between such part
> owners." In distributing the sales proceeds, any amounts a co-
> owner has expended in repairs or improvements, or paid on a
> joint and several debt, may be taken into account along with all
> other relevant equitable considerations. [Emphasis added].
> *Libby at 40*. [Internal citations omitted].

Accordingly, if the Plaintiff, within 90 days from the date this
Judgment becomes final, presents the Defendant with a commitment letter
from a licensed financial institution approving a refinancing of the current
debt which releases him from further liability, and provides for an additional
cash payment to the Defendant in the amount of $46,125, the Plaintiff will
be entitled to full ownership of the 236 Mud Creek Road property and
improvements thereon upon tender of the actual $46,125 payment and the
filing of a Notice of Satisfaction of Judgment with the Court in the matter
PA-11-206. To the extent the Plaintiff is able to meet these obligations, the
Defendant is hereby ordered to execute all necessary documents to complete
such a transaction.

If the Plaintiff is unable to arrange the financing necessary to purchase
the Defendant's interests in their property, as set forth in the previous
paragraph, within the 90 day time frame described, the parties are hereby
ordered to list the 236 Mud Creek Rd. property for sale on the terms set forth

10

below. If the parties are unable to mutually agree upon a real estate agent to assist in the sale of the property, each party shall immediately designate a real estate agent who will then agree upon a third licensed real estate agent to act as the listing agent for the property. Unless mutually agreed to otherwise by the parties, the property shall be listed for sale at the price of $400,000. Again, unless mutually agreed to otherwise by both parties, any qualifying offer in the amount of at least 95% of the listing price shall be accepted by the parties.

The first $46,125 of the net sale proceeds[5] shall be paid to the Defendant to the extent there are at least $92,250 in net proceeds available. The balance of any net proceeds in excess of $92,250 shall be paid to the Plaintiff to the extent she has filed a Notice of Satisfaction of Judgment with the Court in the matter PA-11-206.

To the extent a sale of the property becomes necessary, the parties are ordered to cooperate in executing any necessary documentation to facilitate a sale on the terms as outlined above.

As outlined in the factual background section above, the parties' personal property is to be divided and allocated between the parties as indicated. The parties are hereby ordered to cooperate in facilitating any exchange of the personal property necessary to accomplish this division,

---

[5] Net proceeds include the purchase payment received after payment of the existing Machias Savings Bank loans, the agent's commission and any usual and customary closing related expenses.

11

including providing reasonable access to the property to retrieve any such items.

Prior to the commencement of the trial, and again during the course of the trial, Counsel for each of the parties filed numerous motions delineated as either motions in limine or motions for sanctions. Based on the Court's findings and decision as contained in this Decision, Judgment & Decree, the Court deems any pending motion in limine to be moot. Moreover, the Court is not persuaded that the movant with respect to any pending motion for sanctions has demonstrated entitlement to any relief sought in such a motion. Accordingly, any remaining pending Motion for Sanctions is hereby, DENIED.

Neither party is entitled to an award of Costs in this matter.

The Clerk is directed to incorporate this Decision, Judgment & Decree, by reference, in accordance with MRCivP 79(a).

Date: 11/26/18

_____
SUPERIOR COURT JUSTICE

12