2002 ME 147

Jeffrey **ACKERMAN**

v.

Theodore M. **HOJNOWSKI**

No. Han–02–60.

Supreme Judicial Court of Maine.

Submitted On Briefs: July 22, 2002.

Decided: Aug. 27, 2002.

Sandra Hylander Collier, Esq., Ellsworth, for plaintiff.

Defendant did not file a brief.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Jeffrey Ackerman appeals from the judgment entered in the District Court (*Staples, J.*) ordering the sale of the real property jointly owned by Ackerman and Theodore M. Hojnowski. The issues presented by Ackerman's appeal include: (1) whether the court erred by finding that the property was not a partnership asset, (2) whether the court erred by failing to take into account Ackerman's contribution to the acquisition and improvement of the property, (3) whether the court erred by failing to give Ackerman credit for his assumption of joint indebtedness, (4) whether the court abused its discretion by refusing to give Ackerman the option to buy Hojnowski's interest, and (5) whether the court erred by rejecting the testimony of Ackerman's expert regarding the present value of the property. We conclude that the court erred only by failing to take into account Ackerman's contribution to improvements made on the property. Accordingly, we vacate the judgment in part.

## I.  BACKGROUND

[¶ 2] The testimony presented at trial and the procedural history of the present case may be summarized as follows: Ackerman met Hojnowski in 1976. They began a domestic partnership in 1981 when Hojnowski moved into Ackerman's Abington, Pennsylvania residence. In 1992 Hojnowski and Ackerman purchased

a residence in Castine for $83,500, and Ackerman sold the Abington residence for $146,000. Ackerman paid the entire purchase price of the Castine property with the proceeds of the sale of the Abington residence. Title to the Castine property was held by Ackerman and Hojnowski as joint tenants.

[¶ 3] As part of their decision to move to Castine, Hojnowski and Ackerman decided to start a pasta making business which would be operated out of their home. Ackerman spent $32,000 from the excess proceeds of the sale of the Abington property to purchase equipment for the business and an additional $15,000 to improve the Castine property. Ackerman and Hojnowski also borrowed $65,000 secured by a mortgage to finish the improvements as well as a $10,000 home equity loan. Mortgage payments were paid with funds generated from the pasta business. In addition, Ackerman and Hojnowski have other joint debts that total approximately $12,500.

[¶ 4] On October 4, 2000, Ackerman filed a complaint in the District Court requesting an equitable partition of the Castine property and an accounting and division of personal and business assets. Ackerman alleged that he obtained a temporary protection from abuse order against Hojnowski on December 2, 1999, that granted him exclusive possession of the Castine property, and he alleged that he had continued to operate the pasta business as a sole proprietorship. At trial, he testified that he had continued to make mortgage payments and that he had paid all other joint debts.

[¶ 5] Following the trial, the court entered judgment ordering that the Castine property be sold and the proceeds distributed to the parties equally. The court also set aside the partnership assets and any liabilities to Ackerman. Following a request for findings of fact and conclusions of law and a motion to alter or amend the judgment, the court amended its order to provide that the sale price of the property be at least $96,000, that Ackerman "be responsible for all costs associated with mortgages, taxes, insurance, and minor repairs ... in exchange for the right to possess the property exclusively," and that either party may purchase the property from the other if both so agreed. The amended order also provided that the partnership assets be set aside to Ackerman "in exchange for the partnership debts which he paid from his own personal funds." Ackerman then filed the present appeal.

## II. REAL PROPERTY AS PARTNERSHIP ASSET

[¶ 6] The court made the following finding regarding the Castine property:

(4) The Court finds that the initial and continuing intent of the parties was to purchase the Castine property for retirement purposes. Its use as a place to conduct their business was only incidental. Therefore upon the de facto termination of their partnership, the property reverted to its intended use and is not deemed now by this Court to be partnership property....

Ackerman contends that this finding is clearly erroneous. He contends that rather than grant his "alternative count for partition of real estate" and divide the property equally, the court should have applied partnership law and divided the property unequally in accordance with the parties' relative contributions.

[¶ 7] Partnership property is "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership." 31 M.R.S.A.

§ 288(2)(A) (1996). Title to real property of a partnership may be held either in the name of the partnership or in the individual name or names of one or more of the partners. *See* 31 M.R.S.A. §§ 288(2)(C) & 290(2)(C) (1996). Generally, the intent of the partners governs whether property held in the partners' individual names is properly considered partnership property. *See Tang of the Sea, Inc. v. Bayley's Quality Seafoods, Inc.*, 1998 ME 264, ¶ 7, 721 A.2d 648, 650. The intent of the partners is a question of fact. *Standring v. Standring,* 794 P.2d 1089, 1091 (Colo.Ct.App. 1990); *Eckert v. Eckert*, 425 N.W.2d 914, 915 (N.D.1988). We will uphold the trial court's factual findings unless they are clearly erroneous, and " '[t]he trial judge's findings stand unless they clearly cannot be correct because there is *no* competent evidence to support them.' " *Stickney v. City of Saco*, 2001 ME 69, ¶ 13, 770 A.2d 592, 600 (quoting *Sturtevant v. Town of Winthrop*, 1999 ME 84, ¶ 9, 732 A.2d 264, 267).

■ [¶ 8] In the present case, there is competent evidence to support the trial court's determination that the parties' intended the Castine property to be their individual property and not the property of their business partnership. Their primary motivation for purchasing the Castine property was to move to Castine and reside in the residence, and only incidentally to conduct their business there. Hojnowski and Ackerman did not decide to start a pasta making business until after they were under contract to buy the residence. In addition, the residence was initially purchased with Ackerman's non-partnership funds, and the title to it was taken in Hojnowski and Ackerman's individual names. *See* 31 M.R.S.A. § 288(2)(B) & (C) (1996). There was ample support for the conclusion that the parties did not intend to contribute their residence to their business partnership.

### III. CONTRIBUTIONS TO ACQUISITION AND IMPROVEMENTS

■ [¶ 9] In its decision, the court found that Ackerman contributed the entire purchase price of the Castine property because it was paid for entirely with the proceeds of the Abington property sale. Nonetheless, the court ordered that the Castine property be sold and the proceeds divided equally because, pursuant to *Bradford v. Dumond*, 675 A.2d 957 (Me.1996), it could not "take into consideration the fact that the purchase price was in total, the contribution of [Ackerman]."

[¶ 10] In *Bradford v. Dumond*, we stated that "[i]n general, joint tenants own equal undivided shares even though their initial contributions may have been unequal. That result is a consequence of the right of ownership that attaches to a joint tenancy." 675 A.2d at 961. Emphasizing our phrase "[i]n general," Ackerman contends that *Bradford* does not purport to apply unequivocally in all cases, and he attempts to distinguish *Bradford* from the present facts.

[¶ 11] Contrary to his contention, however, the rule stated in *Bradford* is a general rule of law that is directly applicable in the present case. As we explained in *Boulette v. Boulette:*

> The division of property held in joint tenancy should take into account all equities growing out of that relationship. Contributions of the parties to the property prior to the joint tenancy, however, are not equities growing out of the joint tenancy relationship. To allow the consideration of contributions preceding the joint tenancy would defeat joint ownership.

627 A.2d 1017, 1018 (Me.1993) (citation omitted). "This issue has been settled in Maine for over half a century." *Bradford,* 675 A.2d at 961. Ackerman and Hojnowski are joint tenants in the Castine property. As joint tenants, they have "an equal, undivided share of the property." *Id.* This is true even though one joint tenant supplied 100% of the purchase price. *See id.* (discussing *Greenberg v. Greenberg,* 141 Me. 320, 43 A.2d 841, 842 (1945)). To consider Ackerman's and Hojnowski's relative contributions to the initial acquisition of the property "would defeat joint ownership." *Boulette,* 627 A.2d at 1018.

■ [¶ 12] Ackerman is correct, however, in his assertion that the amounts that he spent to improve the property after it had been acquired should be taken into consideration in dividing the proceeds of a sale of the property. *Libby v. Lorrain,* 430 A.2d 37, 40 (Me.1981). The court found that "until separation, any increase in value to the property after acquisition was equally the result of contribution by both parties." "The court's findings as to the value of each parties' contributions are findings of fact" and " 'shall not be set aside unless clearly erroneous.'" *Bradford,* 675 A.2d at 961 (quoting M.R. Civ. P. 52(a)).

[¶ 13] In the present case, the court's finding that both parties contributed equally to the increase in value of the Castine property is not supported by the evidence or the court's other findings. The court specifically found that the total net proceeds of the sale of the Abington residence were "allocated" to Ackerman, and Ackerman testified that he contributed at least $15,000 of these proceeds to improve the Castine property. Hojnowski agreed that proceeds from the sale of the Abington residence had been used to make the improvements. Both parties acknowledged that the remaining funds used to improve the property came from a mortgage that was paid from the income of the pasta business. Thus, although the majority of the funds used for improvements came from a loan that was paid from the jointly earned pasta business revenue, it is undisputed that Ackerman also contributed $15,000 of what the court found to be his own funds, and there is no evidence that Hojnowski contributed any of his separate funds toward the improvements.

[¶ 14] We conclude that it was clear error for the court to find that any increase in value of the property after acquisition was equally the result of contributions by both parties in view of the undisputed testimony that Ackerman contributed $15,000 and Hojnowski contributed no money toward the improvement of the property. On remand, the court should consider whether to credit Ackerman with all or some of the $15,000 as part of the partition of the property, taking into account all other relevant equitable considerations.

## IV. ASSUMPTION OF JOINT DEBT

■ [¶ 15] Ackerman argues that the court "simply ignored" evidence that he had paid $12,500 in joint personal debt—debts that "were not connected with the business in any way" and that "resulted from the domestic partnership between the parties." He contends that the court should have taken into account his assumption of these joint debts "[s]omewhere in the mix" of the real estate issues and the partnership issues.

[¶ 16] In his complaint, Ackerman requested an equitable partition of the Castine property and an accounting and division of "personal and business assets and debts acquired and incurred pursuant to their domestic and business partnership." These requests invoke the jurisdiction of the District Court provided in 4 M.R.S.A.

§ 152(5)(L) (Supp.2001). Pursuant to that section, the District Court has original jurisdiction and may grant equitable relief in "[a]ctions concerning partnership, and between partners or part owners of ... real and personal property to adjust all matters of the partnership and between the part owners." *Id.* Maine's Uniform Partnership Act defines a partnership as "an association of 2 or more persons ... to carry on as co-owners a business for profit." 31 M.R.S.A. § 286 (Supp.2001).

[¶ 17] Contrary to Ackerman's contention, the court was not authorized by section 152(5)(L) to allocate joint personal debts relating to the domestic partnership of the parties that are not related to the property being partitioned. Ackerman and Hojnowski's domestic partnership was not an association to carry on a business for profit, and, thus, the allocation of debts associated with their personal relationship is not within the court's power to "adjust all matters of the partnership." 4 M.R.S.A. § 152(5)(L). Furthermore, their personal debts do not relate to the joint tenancy relationship; thus the court's power to "adjust all matters ... between the part owners" is not applicable. *Id.* § 152(5)(L); *see generally Boulette,* 627 A.2d at 1018 ("The division of property held in joint tenancy should take into account all equities growing out of that relationship.")

## V. OPTION TO BUY REAL ESTATE

[¶ 18] In its amended judgment, the court expressly provided that "[i]f the parties agree, either party may purchase said property upon these terms and conditions.

Any disagreement, however, must be related to terms of sale and not the identity of the purchaser." Ackerman contends that the court abused its discretion by failing to give him an opportunity to buy out Hojnowski's interest in the Castine property not conditioned upon Hojnowski's agreement to the terms of the sale.

[¶ 19] By statute, the court may assign the property to be partitioned to one party and require that party to pay a sum of money to compensate another party for his or her share in the property. 14 M.R.S.A. § 6515 (1980).[1] General equity principles give the court the same power. *Libby,* 430 A.2d at 39–40. The court, however, is not required to permit one party to buy the interest of the other, *id.,* and acts within its discretion by refusing to do so even if the party has the financial ability to pay for the interest, *Scheetz v. Hartman,* 572 A.2d 140, 141 (Me.1990). Contrary to Ackerman's contention, therefore, it was within the court's discretion to order the sale of the property without providing Ackerman the unconditional right to purchase Hojnowski's interest.

[¶ 20] In view of our decision that the court should reconsider whether to credit Ackerman in its order of partition with all or some of the $15,000 he spent improving the residence, the court on remand must also reconsider whether Ackerman should be granted an unconditional opportunity to buy Hojnowski's interest in the property. In exercising its discretion, the court must consider all relevant factors. Without suggesting that these are the exclusive relevant factors, we note that (1) Ackerman has lived in the Castine residence since

---

1. Section 6515 provides:
   When any parcel of the estate to be divided is of greater value than either party's share and cannot be divided without great inconvenience, it may be assigned to one party by his paying the sum of money awarded to the parties who have less than their shares, but the report shall not be accepted until the sums so awarded are paid or secured to the satisfaction of the parties entitled thereto.
   14 M.R.S.A. § 6515.

1992, and he has expended considerable time and money improving the property; (2) the court has assigned Ackerman the assets and liabilities of the pasta business, and consideration should be given to Ackerman's ability to continue the business if the residence is sold to a third-party; and (3) the amount of Hojnowski's interest may not be significant enough, after deducting the expenses of the sale, to justify a third-party sale. A court contemplating granting a joint tenant an unconditional opportunity to buy the other joint tenant's interest must also consider, however, whether the party who desires the buy-out has the financial capacity to discharge the outstanding mortgage obligations and pay for the other joint tenant's interest as determined by the court. *See Libby*, 430 A.2d at 40.

[¶ 21] On remand, therefore, the court should reconsider whether it is more equitable to offer Ackerman an unconditional opportunity to buy Hojnowski's interest in the property on terms established by the court, rather than conditioning that opportunity on Hojnowski's agreement to the terms of sale.

## VI. VALUE OF PROPERTY

[¶ 22] Ackerman's expert witness, Karen Koos, testified that she conducted a comparative market analysis of the Castine property and concluded that the fair market value of the property was $95,966. Hojnowski testified that he estimated that the fair market value was at least $150,000. The court ultimately ordered that the property be sold at a price recommended by a broker other than Koos "but for no less than $96,000.00." Ackerman contends that the court erred by rejecting Koos's testimony and by failing to make a specific finding regarding the property's value.

[¶ 23] Contrary to Ackerman's contention, it appears that the court adopted Koos's valuation of the property when it established $96,000 as the minimum acceptable price for the sale of the property. Because the disposition of the property will be reconsidered by the court on remand, it will have the opportunity to clarify its finding regarding the value of the property. If the court did not intend to adopt Koos's opinion regarding the value of the property, it may receive additional evidence and make a finding based thereon.

The entry is:

Judgment affirmed in part and vacated in part. Remanded to the District Court for further proceedings consistent with this opinion.