STATE OF MAINE
KENNEBEC, SS.

DISTRICT COURT
CIVIL ACTION
DOCKET NO. AUGDC-RE-18-51

TODD AUBUCHON,
Plaintiff/Counterclaim Defendant

V.

CARINA O'CONNOR
(f/k/a Aubuchon),
Defendant/Counterclaim Plaintiff

and

M & T BANK COORPORATION.
Party-in-Interest

## INTRODUCTION

This matter is before the court on the Plaintiff's complaint and the Defendant's counterclaim for the partition of their former marital home located at 73 Jewett Road in Pittston, Maine (hereinafter referred to as the "property"). The Plaintiff (Todd Aubuchon) commenced this action on June 11, 2018 with the filing of his complaint for equitable partition pursuant to 14 M.R.S. § 6051.[1] The Defendant (Carina O'Connor f/k/a Aubuchon) promptly answered and counterclaimed for partition in accordance with 14 M.R.S. § 6501 (statutory partition) (Count I)[2] and 14 M.R.S. §

---

[1] Although the Plaintiff expressly invoked the court's equity jurisdiction by requesting equitable partition, he referred to 14 M.R.S. § 6501 which describes the procedure for statutory partition that seeks to physically divide the property. The court understands that this was merely a typographical error and that the Plaintiff intended to cite 14 M.R.S. § 6051, the procedure for equitable partition.

[2] At trial the Defendant did not pursue any claim for statutory partition and the parties proceeded with the understanding that the property could not be physically divided. Rather, the court and the parties understood that an equitable partition was being sought. *See Libby v. Lorrain*, 430 A.2d

6051 (equitable partition) (Count II). M & T Bank Corporation was added as a party-in-interest and was represented by counsel, but did not appear or participate at the trial. The case was assigned to the Superior Court on June 16, 2019 (Walker, J.).

A one-day bench trial was conducted on September 11, 2019 at which the court received the testimony of Mr. Aubuchon in his case-in-chief and in rebuttal. Plaintiff's Exhibits 1 – 13 were admitted into evidence. Ms. O'Connor testified in her case-in-chief and also in rebuttal. Defendant's Exhibit 1 was admitted into evidence. The parties submitted written arguments, which were received by the court on September 25, 2019.

Based upon the evidence presented at trial, and after consideration of the written arguments of counsel, the court makes the following findings of fact.

## FACTS

Todd Aubuchon and Carina O'Connor (f/k/a Aubuchon) were married in 1986. They had five children. Aubuchon was, and is, a truck driver who was frequently away from home. O'Connor was essentially a stay-at-home mother for the couple's five children.

O'Connor testified, and the court finds, that she was the person in the marriage who paid the bills and otherwise handled the finances, although she noted that she paid the bills from the money Aubuchon gave her. In April 2007, Aubuchon and O'Connor purchased the property at 73 Jewett Road in Pittston. The purchase price was $246,500 and they financed the sum of $132,000 by way of a promissory note signed by Aubuchon and secured by a mortgage signed by both Aubuchon and O'Connor.

Ultimately, however, the marriage began to dissolve. Aubuchon testified that O'Connor left the marital home and Aubuchon in April 2014, and never returned. It

___

37, 38-39 (Me. 1981) where the Law Court explained the differences between statutory and equitable partition.

is the court's understanding from the testimony that a son, age 17 at the time, was the only minor child still residing in the home. O'Connor testified that she actually left in March 2013 when Aubuchon asked her to leave. Both Aubuchon and O'Connor were vague as to what triggered O'Connor's decision to leave the marital home for good. Once she left, however, O'Connor never returned to Maine until she appeared for this trial. The court finds, more likely than not, that O'Connor left in March 2013.

In April 2013, M & T Bank Corporation filed a complaint for foreclosure on the property at 73 Jewett Road. *Plaintiff's Exhibit 3*. There was a factual dispute between the parties as to what may have set the stage for the foreclosure action. For example, Aubuchon testified that O'Connor failed to make the mortgage payments even though she was supposed to be paying the bills. O'Connor, on the other hand, testified that she had already left the home in March 2013 and was totally unaware that a foreclosure action had been initiated against the property.

After leaving the marital home, O'Connor eventually moved to Massachusetts. She initiated divorce proceedings in that State. A judgment of divorce was granted to O'Connor on the basis of cruel and abusive treatment on November 24, 2015, and became effective after February 22, 2016. *Plaintiff's Exhibit 6*. The court in Massachusetts did not address the marital property physically located in Maine that is the subject of this partition proceeding.

In the meantime, Aubuchon apparently arranged for a modification of the loan and thereafter made the mortgage payments that, at least in part, included payments for taxes and insurance through an escrow account with the lender. *Plaintiff's Exhibits 7 & 12*. Aubuchon offered the opinion that the fair market value of the property at the time of trial was $223,600, i.e., the assessed value. O'Connor does not disagree.

The house at 73 Jewett Road was new when the parties purchased it in 2007. Aubuchon testified that after O'Connor left the marital home, he made certain improvements and repairs to the property. Specifically, he testified that he made the following improvements/repairs: installation of a rock/gravel driveway; installation of an above ground swimming pool; creation of a flower garden; enlargement of a small pond with a fountain; construction of a new rock wall. He and O'Connor testified about a rock wall on the property that was built by them when they were still living together. The court found the testimony about the rock wall, and whether there were one or two walls on the property, to be confusing. Nevertheless, the parties agreed that the rocks for the wall(s) were collected, not purchased, and that the wall(s) required "steady" maintenance because they were "free-standing" and were not held together with mortar.

Aubuchon is seeking a credit for the payments he made for the mortgage, taxes and insurance on the property made by him since March 2013, when O'Connor left the home, for a total of $65,165. *See Plaintiff's Proposed Order*. He is also seeking the sum of $5,500 for the work he did to improve and maintain the property during that time period.

O'Connor contests that Aubuchon is entitled to a credit for the work he did on improvements to the home. She agrees that he is entitled to a credit for $125 for repair/cleaning of the furnace and $600 for excavator work for the expansion of the pond in the summer of 2014. O'Connor also agrees that Aubuchon should be credited the sum of $4,891.42 for property tax payments since the effective date of the divorce, but she contests his entitlement to any credit for payments made to re-finance or modify the mortgage that had the effect of increasing the principal balance by over $9,000. O'Connor seeks a credit for herself for one-half of the fair rental value of the property since the effective date of the divorce to the present. O'Connor offered the opinion that the fair market rental value of the property is $1,500 per

4

month. She therefore seeks a credit of $750 X 44 months (to the end of October 2019) = $33,000. *See Defendant's Proposed Order.* O'Connor acknowledged that she did not have any expertise in appraising the rental value of the property, but she was "throwing out" that figure based on a 3-bedroom/2-bathroom home. Aubuchon contests O'Connor's entitlement to any credit for the rental value of the home because her testimony as to its rental value was speculative.

Finally, the parties agree that the fair market value of the property today is its assessed value of $223,600. They further agree that the principal balance due on the modified loan as of the date of the trial is $134,998, leaving equity in the property of $88,601.73. They also agree that the property cannot be physically divided and, therefore, equitable partition is the appropriate method of setting aside to each of them their equitable share of the proceeds from the sale of the property.

Additional findings of fact will be made in the Discussion section of this Decision and Judgment.

## DISCUSSION

This matter is not a divorce proceeding governed by Title 19-A. Rather, it is an action to equitably partition the property governed by 14 M.R.S. § 6051 *et. seq.* The Law Court has provided guidance to trial courts when confronted with a request to partition property held in joint tenancy.

As an initial matter, "joint tenants own equal undivided shares" in the property. *Ackerman v. Hojnowski*, 2002 ME 147, ¶ 10, 804 A.2d 412. "The division of property held in joint tenancy should take into account all equities growing out of that relationship." *Id.* at ¶ 11. In this connection, "[a]ny full accounting must take into consideration any contributions made by either . . . co-tenant." *Libby v. Lorrain*, 430 A.2d at 40.

As applicable to this case, the Law Court has instructed that "any amounts a co-owner has expended in repairs or improvements, or paid on a joint and several

5

debt, may be taken into account along with all other relevant equitable considerations." *Id. See also Polanza v. Lufkin*, 2002 ME 143, ¶ 11, 804 A.2d 1141 ("the general principle is that when one cotenant pays more than his share of taxes, mortgage payments, and other necessary expenses, equity imposes on each cotenant the duty to contribute his proportionate share.")

"Improvements" and "repairs," however, are not the same and are not treated the same when partitioning the proceeds from the sale of property. A co-tenant making improvements to the property is generally awarded the resulting increase, if any, in the value of the estate and not the actual cost of the improvements. *Polanza v. Lufkin*, 2002 ME 143, ¶ 11. Repairs to the estate, on the other hand, typically entitle the co-tenant to receive a dollar for dollar credit for the actual cost of the repair/maintenance. *Id.*

Also pertinent to this case is the well-recognized principle that ". . . in a proceeding for equitable partition the court may consider the reasonable rental value of the property during the period of time when one co-tenant was in exclusive possession of the property. . . ." *Wicks v. Conroy*, 2013 ME 84, ¶ 18, 177 A.3d 479. *See also Scheetz v. Hartman*, 572 A.2d 140, 141 (Me. 1990). In order for an out-of-possession co-tenant to be credited for the reasonable rental value of the property exclusively occupied and used by the other co-tenant, it is not necessary to show an "ouster." *Id.* On the other hand, the out-of-possession tenant has the burden of satisfactorily proving the reasonable rental value. Indeed, the person seeking any credit or set-off has the burden of establishing it. *Polanza v. Lufkin*, 2002 ME 143, ¶ 14. An asset's value is a question of fact. "Property owners, by reason of their ownership alone, may state their opinion as to the fair market value of their property." *Wicks v. Conroy*, 2013 ME 84, ¶ 15 *quoting Hutz v. Alden*, 2011 ME 27, ¶ 15, 12 A.3d 1174.

6

With these principles in mind, it is now appropriate to apply them to the facts of this case.

The court awards a credit to Aubuchon of only $125 for maintenance and repair to the property. The remaining request for a credit for "improvements" to the pond, building a new rock wall, digging a garden, installing a swimming pool, are denied. These enhancements to the property are not entitled to a dollar for dollar credit. Rather, Aubuchon would be entitled to a credit to the extent these improvements increased the value of the property. But Aubuchon produced no evidence that his improvements increased the value of the property.

The court rejects O'Connor's argument that Aubuchon is not entitled to a credit or set-off for the mortgage payments, taxes and insurance he made on the modified loan. As noted above, O'Connor has asserted that Aubuchon's efforts at modifying the loan resulted in a higher principal balance ($134,998.27 as of August 2019) than what existed at the time she left the marital home ($125,480.65). *See Plaintiff's Exhibit 3, ¶ 11*. The court rejects this argument because, although O'Connor testified that she left the home in March 2013 and had no idea that any mortgage payments had not been made and that foreclosure was imminent, the evidence before the court shows that the mortgage payments were in arrears beginning in November 2012. *Id.* This was at a time when O'Connor admittedly was responsible for payment of the bills, including the mortgage, and claimed that she made them all while she was there. As Aubuchon testified, he sought to modify the loan because he still had a minor child in the home and the alternative was foreclosure. Thus, the court concludes that Aubuchon is entitled to a credit for O'Connor's proportionate share of the mortgage payments, taxes and insurance on the modified loan.

Based on its examination of Plaintiff's Exhibits 7, 8, 11 & 12, and as adjusted through October 2019, the court finds that Aubuchon made total payments towards

the mortgage, taxes and insurance of $66,531.50. He is entitled to a credit of one-half of that, namely, $33,265.75.

The court also finds that O'Connor should be awarded a credit for the fair rental value of the property due to Aubuchon's exclusive possession, use and enjoyment of the property. O'Connor, as a co-owner of the property, stated her opinion of the reasonable rental value of a 3-bedroom/2-bath, single family home to be in the range of $1,500 per month. Although Aubuchon tends to dismiss this opinion as conjectural, the court finds it to be within the bounds of reasonableness. Accordingly, as of October 2019, O'Connor is entitled to a credit of $1,500/month X 44 months = $66,000 ÷ 2 = $33,000, for the reasonable rental value of the property exclusively occupied and used by Aubuchon.

## CONCLUSION

The entry is:

The requests for equitable partition in the Plaintiff's Complaint and the Defendant's Counterclaim (Count II) are hereby GRANTED.

The request for statutory partition in the Defendant's Counterclaim (Count I) is DENIED.

The court's equitable partition of the proceeds of the sale of the property is broken down as follows:

Sale proceeds of Real Estate = $223,600[3]
Principal Balance Due     = $134,998.27[4]

Balance (equity)           = $88,601.73 (subject to adjustment)

---

[3] This figure must be adjusted for the actual sales price.

[4] This is the principal balance as of the August 2019 statement. It has not been adjusted to account for any reduction in the principal balance between the time of the trial and the issuance of this Decision and Judgment. The court expects that counsel for the parties will cooperate to make the necessary calculation adjustments consistent with this Decision.

8

|              | Aubuchons' Share      | O'Connor's Share  |
|--------------|-----------------------|-------------------|
|              | $44,300.87            | $44,300.87        |
| Repairs      | $125.00               | ($125.00)         |
| Mortgage/    | $33,265.75[5]         | ($33,265.75)      |
| Taxes/Ins.   |                       |                   |
| Rental Value | ($33,000)             | $33,000[6]        |
|              | $44,691.62            | $43,910.12        |

The court orders the property to be immediately placed on the market to be sold. The parties are to retain the services of a licensed real estate broker for the purpose of formally listing the property for sale. If the parties are unable to agree on a real estate broker, the parties shall each select a broker of their own choosing. The parties' brokers shall, in turn, select a third real estate broker who will be responsible for listing the property. The listing broker will make recommendations to the parties regarding the listing price. Any such reasonable suggested listing price shall be the sales price used unless both parties agree in writing to a different price.

If the Plaintiff, within thirty (30) days of the date this Decision and Judgment becomes final, presents the Defendant with a commitment letter from a licensed financial institution approving a refinancing of the current debt which releases the Defendant from further liability and provides the Defendant with a cash payment in the amount of the Defendant's share (as adjusted in a manner consistent with this Decision and Judgment), the Plaintiff shall be entitled to full ownership of the property upon tender of the Defendant's share and the filing of a Notice of Satisfaction of Judgment with the court. To the extent the Plaintiff is able to meet these obligations, the Defendant is ordered to execute all documents necessary to complete such a transaction.

---

[5] The court has adjusted this figure through October 2019.

[6] The court has adjusted this figure through October 2019.

9

Dated:    October 29, 2019

William R. Stokes
Justice, Superior Court