STATE OF MAINE                               SUPERIOR COURT
CUMBERLAND, ss.                              CIVIL ACTION
                                             DOCKET NO. RE 19 191


JAMES DECOURCEY, *et. al.*


v.                                           JUDGMENT


LILA SIMPSON, *et. al.*


This matter came before the court for a final hearing on December 7, 8 and 9.

### FINDINGS OF FACT

1. On 2011, Verna DeCourcey deeded a condominium in South Portland to her six sons, Michael, Joseph, Patrick, James, Richard, and John DeCourcey by a deed recorded in the Cumberland County Registry of Deeds at Book 28841, Page 301.

2. By virtue of the deed, the sons owned property as joint tenants subject to a life estate reserved by their mother. The life estate terminated at Verna's death with all rights of ownership reverting to her sons at the time of death.

3. Verna suffered from Alzheimer's and moved to nursing care in 2013. She then moved to Cumberland with Richard's wife Heidi, and on to New Mexico and ultimately Arizona with John and his wife Lila Simpson.

4. John DeCourcey conveyed his interest in the property to his wife Lila Simpson by a deed recorded at the Cumberland County Registry of Deeds, Book 34984, Page 127. Michael DeCourcey conveyed his interest in the property to James DeCourcey by a deed dated May

1

REC'D CUMB CLERKS OFC
DEC 10 '21 PM3:28

26, 2021. The exhibit does not have a book and page number from the Cumberland County Registry of Deeds. That conveyance leaves James with a 2/6 interest.

5. The brothers were at odds over their mother's health and care as well as the use of the condominium. Although individual brothers' ability to communicate with others differed from brother to brother, the disputes were primarily between the Plaintiffs and the Defendants.

6. The court does not find that any of the parties are more responsible for the inability to communicate and freely share information than the other parties. All the parties on some level are hurt by and feel wronged by these events. John DeCourcey and Lila Simpson bore the burden of caring for their mother in Arizona. The Plaintiffs were hurt by John and Lila's decision to take Verna to Arizona without their knowledge.[1]

7. As a result, deep distrust developed between the Plaintiffs on one hand and the Defnednats on the other.

8. After their mother moved out of the condominium, John, Richard and their families prepared the condominium for rental. They were able to rent it from April 2014 until  , 2019. Fortunately, they had one tenant in the condominium that entire time.

9. Rent payments of $1100 a month were deposited into Verna's bank account. The money from her bank account was used to provide for her needs. With certain exceptions, expenses for the condominium were also paid by Verna. Although she no longer lived there, she still maintained a life estate in the premises.

---

[1] The issues regarding their mother's care were more important to all of the parties than the money from the condominium. All of parties to some degree wanted to litigate who was wronged by the other parties' conduct relating to the care of their mother. While the court understands that these were the issues most important to the parties, they had marginal probative value to the partition action. To fairly decide the issue, the court would have had to go into the details of what happened in 2013 and onward. That evidence, however, was not admissible under M.R. Evid. 403. Therefore, the court's decision does not reflect any conclusions by the court on who acted in Verna's best interest.

2

10. While Verna was alive, the Defendants saw their work related to the condominium as part of their support for Verna.

11. Richard and Lila each claim they made payments necessary to the ownership of the condominium or that contributed to the value of the condominium.

12. The court finds that Richard paid Homeowner's Association fees of $750, insurance payments of $473, utilities of $158.09 and property taxes in the amount of $725.

13. Richard also claims he did work that added value to the property by performing labor at the property. Reviewing Richard's invoice, the court finds that the 2001 work predated the brothers' ownership of the property.

14. With respect to the work done from 2013 to 2017, the court finds that Richard's work was done to support and as assistance to Verna. Moreover, the work was routine maintenance as opposed to adding value to the property.

15. With respect to the work done in February and March, 2021 the court finds Richard completed the work with the intent to add value to the property or to prevent waste. It appears that some of the work was cosmetic, mere maintenance and some of it was left uncompleted. Therefore, the court considers a lesser value for the work and finds the work had a value of $800.

16. The court finds that Richard's decision to store Verna's motor vehicle as well as personal property at his house was done to benefit Verna and is unrelated to the value of the property. His ongoing decision to store those materials is unrelated to this partition action

17. The court finds that Lila's property management services were intended to benefit Verna and are unrelated to the partition action.

18. The court finds that James either paid property taxes, or is given credit for Michael's payment of property taxes in the amount of $6142.

19. There are homeowners' association dues that are still outstanding.

20. There are additional property taxes due to the City.

21. After Verna died on April 5, 2019, the Plaintiffs continued to rent the property to the tenant. His tenancy ended in August. The Plaintiffs' share of the rent that the Defendants collected was $2,811.08.

22. The parties are unable to cooperate in sale of the property. Permitting one party over the other to control the sale would generate too much risk of additional litigation over the sale.

23. It is impractical to divide the property amongst the owners.

24. Sale of the property will include several costs, including a 6% realtor's fee and other out-of-pocket costs, including closing costs.

25. Neither party provided sufficient evidence to cause the court to order a buyout, including financial capacity.

26. The parties cannot work together to select a realtor. If either one party or another is permitted to select the realtor, then the lack of trust will cause the process of sale to be overly contentious and possibly unsuccessful.

27. Except for the cost, Defendant had no objection to the selection of Attorney Michael Traister to serve as a Third Party Neutral.

28. Defendants objected to the cost and the necessity of the neutral. Plaintiff's counsel represented that the Neutral's fees are $325 an hour and that he would take an estimated 4 – 10 hours.

29. James testified that he would be willing to pay for the neutral. Counsel at closing ask that those fees be shared.

## CONCLUSIONS OF LAW

When division of the property is impractical, the court may order the sale of jointly held property and a division of the proceeds. 14 MRSA § 6515; *Hutz v. Alden,* 2011 ME 27, ¶ 13. One option that the court has is to award one party ownership of the property and to require that party to pay the other parties for their share of the property. *Wicks v. Conroy,* 2013 ME 84. ¶20. When considering this option, the court will consider all relevant factors including the financial capacity to pay for the other cotenant's interest in the property. *Id.* The court, when fashioning a remedy, should consider whether the court's remedy will prolong a contentious dispute. *Id.*

In a joint tenancy, each owner owns an equal share of the property. *Ackerman v. Hojnowski,* 2002 ME 147, ¶ 11. "The division of property held in joint tenancy should take into account all equities growing out of that relationship." *Id.* Considerations may include payments such as taxes, homeowner's insurance, association dues, etc. as necessary to the ownership of the property. *Palanza v. Lufkin,* 2002 ME 143, ¶ 11. They may also include a party's improvements to the property. *Ackerman,* ¶ 12. The Law Court has said that the court should award the value of the improvements, not the actual cost of the improvement. *Palanza,* ¶ 11. On the other hand, the Law Court has also suggested that the court could consider properly proven "time and expenses" incurred if the repairs were intended to prevent waste to the property. *Strand v. Velandry,* 2020 ME 38, ¶ 11. The court cannot consider improvements made prior to the joint tenancy. *Ackerman,* ¶ 12. The court also cannot consider personal debts that are not related to the property. *Id.* ¶ 17. Otherwise, the balancing of the equities allows the court to consider all relevant equitable considerations. *Libby v. Lorrain,* 430 A.2d 37, 40 (Me. 1981).

5

Applying these principles to this case, the court orders sale by a third party neutral. The court strongly considered a buy out, but neither party introduced evidence that provided strong support for that approach. Furthermore, if one side considered itself the "winner" of the buyout issue, it would fuel further contention between the parties. Similarly, the parties have shown that they are unable to accept a realtor selected by the other.

As described in more detail below, the court appoints Attorney Michael Traister to act as a court appointed Third Party Neutral. The Plaintiffs proposed Traister and the Defendants did not object to him except for cost. The court agrees that, in part, the cost should be shared. The first $2600 of Traister's fees and expenses are to be paid from the proceeds of sale. Given James' offer at trial and given that the use of an attorney as a third party neutral was at the request of the Plaintiffs, any additional fees or expenses from Traister shall be paid by James DeCourcey, as well as any retainer Traister may require.

From the sale proceeds, Traister shall pay any outstanding costs of insurance, taxes and association dues. He shall pay his fees, the realtor's fees and any cost of closing or cost of sale. He shall pay any maintenance or repairs necessary to sell the residence. If a prepayment is required and no owner is willing to front the money to be reimbursed by the sale proceeds, then Traister will sell the house without the repair or maintenance.

With respect to the disputed amounts owed to the Defendants, the court does not apply any rent amounts sought in mitigation while the property went unrented during the course of litigation. The parties' inability to rent or sell the property arose from mutual mistrust and the court does not allocate fault to any party. The Defendants acknowledged that the maintenance completed while Verna was alive, the storage fees, and the property management fees, were voluntary efforts completed on behalf of Verna and her financial support. Siblings frequently provide unequal

6

support to elderly parents for a wide variety of reasons and equity does not require reimbursement or an apportionment of the property's proceeds on those grounds. The Law Court is clear that the court is not to settle family debts as part of a partition action. The court does allocate $800 to Richard for the 2021 work.

On the parties' competing claims for a partition, it is Ordered as follows.

1.  The Property will be sold as soon as practically possible. The court appoints Attorney Michael Traister as a third-party neutral to effectuate the sale of the property. For the purposes of the sale of the property, the court bestows Traister with the parties' Power of Attorney to execute any document, including any listing agreement deed, purchase and sale agreement, real estate transfer tax form, property disclosure, contract with any contractor performing work on the property necessary for the sale, or other document as necessary to affect the sale of the property. The parties will cooperate with Traister in their execution of any document needed to effectuate the sale of the property if he requests. Nevertheless, he has the authority to execute any necessary document to effectuate the sale of the property without approval from the parties. Traister has exclusive authority to make all decisions regarding the sale of the property.

2.  Traister will select a realtor and any necessary contractor without input from any party.

3.  In exercising his duties, Traister will have final discretion to make any decision necessary to effectuate the sale the property. He will operate as a reasonably prudent homeowner in the sale of a property with a goal of selling the property as promptly as possible. He will keep the parties equally informed through their attorneys of all significant developments. At his discretion, he may solicit information and suggestions

7

from any party through counsel in any manner of communication he chooses. No party may initiate communication with Traister except through counsel.

4. Traister will not have authority to sanction any party or allocate his fees. Any request for sanctions will be directed to the court.

5. At any point Traister may ask the court for additional orders or clarification. The court will allow 5 days for the parties to object, before ruling on that request.

6. Traister shall distribute the sale proceeds as follows:

> Pay the broker's fee and any closing costs.
>
> Pay $2600 towards Traister's fees and costs, whether that is to reimburse the payor of a retainer or to be paid to his firm directly.
>
> Pay any indebtedness or costs arising from the sale of the property. That would include any party who fronted money as requested by Traister to ready the property for sale.
>
> Pay all outstanding property taxes, Association fees, and property insurance.
>
> Pay Richard DeCourcey $2906.09.
>
> Pay James DeCourcey $6142.
>
> Pay the Plaintiffs a total of $2,811, to be divided amongst them reflecting shares owned in the property.
>
> Divide any remaining proceeds: 1/6 to Lila Simpson, 1/6 each to Richard, Joseph and Patrick DeCourcey, 2/6 to James DeCourcey.

7. To the extent this Judgment needs to be recorded, Plaintiff's counsel will prepare a recordable version containing only that information that needs to be recorded, for the

court's signature. Counsel should share his draft with Traister and Defendants' counsel for approval.

The Entry is: Judgment Entered on Count I of the Complaint and on the Counterclaim. All other counts are dismissed with prejudice.

This Order is incorporated on the docket by reference pursuant to M.R.Civ.P. 79(a).


DATE: _Dec 10, 2021_

_____
Thomas R. McKeon
Justice, Maine Superior Court

9