STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO. PORSC-RE-22-23


MARY SUSAN LEAHY

v.                                      ORDER

JOHN M McANESPIE

REC'D CUMB CLERKS OFF
JUL 29 '24 AM 8:15

This matter came before the court for a bench trial on the Complaint seeking partition and Counterclaim seeking money owed, unjust enrichment, and for declaratory judgment. The Plaintiff, Ms. Leahy, seeks a partition by awarding the entire real estate in question to her on the condition that Ms. Leahy pay Defendant the value of his interest in the property. The Defendant, Mr. McAnespie, seeks a partition by awarding the real estate in question to him on condition that he pay Ms. Leahy the value of her interest in the property. Further, Mr. McAnespie seeks payment for his labor on the property through his counterclaims. As more fully set forth below, the court orders the sale of the property, with Ms. Leahy having the option to buy out Mr. McAnespie's share and retain ownership of the property.

The court finds the following facts.

Ms. Leahy and Mr. McAnespie each own a fifty percent interest in real property as joint tenants with right of survivorship. The property is a two-unit

1

residential property on a single lot located at 93 Oakhurst Island Road in Harpswell, Maine.

The parties presented diametrically opposed ideas on the nature of each party's role related to the property. There was no written agreement or even correspondence before the court. Recollections of the events that led up to the purchase, the transfer in title, and occupation of the property differ and may have evolved over time. What is not in disagreement is the fact that the parties are no longer able to share ownership interests in the property.

The parties first became acquainted in 2017. Mr. McAnsepie was a manager of a shop in Kennebunk which Ms. Leahy frequented regularly and a close customer-seller relationship developed. Ms. Leahy purchased many items with Mr. McAnespie's assistance, and she hired him to assist with some odd jobs at her home. When the parties first met, Ms. Leahy resided in Kennebunk and Mr. McAnespie resided at the home of Ms. Christina Hatch at 99 Oakhurst Island Road in Harpswell. Over time, the parties' relationship progressed to that of close friends, and, for a short period, to one of an "on again, off again" intimate relationship. Through Mr. McAnespie, Ms. Leahy learned that the abutting property at 89 Oakhurst Island Road would be coming up for sale. With the assistance of a realtor, Ms. Leahy acquired 89 Oakhurst Island Road in late 2018, with the property titled in name of Mary Susan Leahy as Trustee of the Mary Susan Leahy trust.[1]

---

[1] Although the closing was in late 2018, Ms. Leahy, who demolished the existing structure and rebuilt, did not take occupancy until July 21, 2021.

2

In 2019, the parties learned that another abutting property, 93 Oakhurst Island Road (hereinafter 93 Oakhurst), might be on the market for sale. The parties had often talked about Mr. McAnespie's desire to own 93 Oakhurst. Initially, Mr. McAnespie attempted to purchase the property himself. In March of 2019, Ms. Leahy contracted an appraisal of the property to assist Mr. McAnespie in his efforts, paying $1,400 for the appraisal on his behalf. Mr. McAnespie made an offer on 93 Oakhurst, which was rejected by the sellers.

After Mr. McAnespie's offer was rejected, Ms. Leahy began negotiating with the sellers about purchasing 93 Oakhurst. Ms. Leahy and Mr. McAnespie explored the possibility of owning the property together. Ms. Leahy had funds from a retirement account available for the purchase. Mr. McAnespie represented that he also had funds available, either by drawing from an annuity he had or by selling a piece of property he owned in Old Orchard Beach. Mr. McAnespie informed Ms. Leahy in June of 2019 that he believed he had $225,000.00 available to contribute to the purchase price for 93 Oakhurst. This proved not to be true, however. The remaining payment from the annuity was only $125,000.00 and was not available until 2030. He also did not make any efforts to list the Old Orchard Beach property for sale. The court finds that during this negotiation period, Mr. McAnespie mislead Ms. Leahy regarding his financial resources.

During this period of negotiations, the sellers worked with a realtor to divide the property at 93 Oakhurst into two parcels, Lot 1 and Lot 2. Ms. Leahy entered into a purchase and sale agreement with the sellers on January

3

28, 2020. The agreement called for a deposit of $5,000.00 towards the overall purchase price of $485,000.00 for the anticipated two parcels of land at 93 Oakhurst. The division of 93 Oakhurst was approved by the Town of Harpswell on March 11, 2020. (*See* Plaintiff's Exhibit 1.)

In February of 2020, doing her due diligence on the property, Ms. Leahy arranged for an inspection on the property to assess the house's condition, water, radon, and the septic system, for which she paid $2,020.00 of her own money. Based on the findings of the survey and inspection, the sellers agreed to reduce the purchase price to $425,000.00 and Ms. Leahy and the sellers entered into an amended purchase and sale agreement on March 6, 2020 reflecting this change.

Upon learning that Mr. McAnespie was unable to contribute half of the purchase price, the parties continued to negotiate terms. Rather than splitting the property with each obtaining one of the lot parcels, the parties agreed that a trust would take title to Lot 2, which the parties referred to as the "Barn Lot," and the parties would equally split ownership of Lot 1, which they referred to as simply "93 Oakhurst Island Road" as joint tenants.[2] The structure on Lot 1 had two apartments, one on the first floor and one on the second. It was further agreed that Mr. McAnespie would have occupancy rights to the upstairs apartment and Ms. Leahy would have use of the downstairs apartment. There was some discussion of Mr. McAnespie assigning his remaining annuity

---

[2] The court will continue to distinguish the parcels as Lot 1 and Lot 2 to avoid confusion.

4

disbursement of $125,000.00 to Ms. Leahy, however that was not permitted pursuant to the terms of the annuity. Ms. Leahy agreed to continue on with the purchase and to have Mr. McAnespie as a joint tenant on Lot 1.

The closing was held on March 12, 2020. Although Mr. McAnespie denies that he was present at the closing, the court finds based on the credible testimony of Ms. Leahy and realtor Eric Humes that he was present. Prior to the closing, Ms. Leahy had instructed the attorneys drafting the deeds to create separate deeds for Lot 1 and Lot 2, with Lot 1 to Ms. Leahy and Mr. McAnespie as joint tenants with rights of survivorship, and Lot 2 (the Barn Lot) to a revokable trust called the Miro Family Trust.

When everyone convened for the closing, however, the attorneys had not drafted separate deeds for each lot, but rather one deed for each seller conveying both parcels to Ms. Leahy and Mr. McAnespie as joint tenants with right of survivorship. (*See* Plaintiff's Exhibits 5-7.). Due to the number of sellers involved, the fact that only one of the three grantors were present at the closing, and a desire to complete the transaction on that date, the parties agreed to continue with the closing with the deeds as prepared. Once the closing was finished, the parties would have the attorney present at the closing draft a new deed transferring the interest in Lot 2 (the Barn Lot) from the

5

parties to the Miro Family Trust.[3] The court finds that Mr. McAnespie was present when this was discussed and agreed.

At closing, Ms. Leahy paid $423,560.99 in addition to the previously paid deposit of $5,000.00, for a total amount paid of $429,362.00. (*See* Plaintiff's Exhibit 9.) Mr. McAnespie did not contribute any funds to the purchase of 93 Oakhurst, Lot 1 and/or 2.

On April 15, 2020, the parties executed a quitclaim deed conveying 93 Oakhurst, Lot 2 only to Mary Susan Leahy and John M. McAnespie, as co-Trustees of the Miro Family trust. (*See* Plaintiff's Exhibit 10, Defendant's Exhibit 6.)

Mr. McAnespie took occupancy of the upstairs apartment in the building on Lot 1 almost immediately following the closing. Ms. Leahy used the downstairs apartment to store belongings and furniture while the renovations were occurring on her property at 89 Oakhurst Island Road. She also used the space to complete projects such as refinishing furniture. Over time, Mr. McAnespie became frustrated with how Ms. Leahy was using the first-floor apartment space. Ms. Leahy stored appliances and other household items intended for her house at 89 Oakhurst in the apartment. Mr. McAnespie was

---

[3] The Miro Family Trust was created on March 27, 2020. Ms. Leahy was named as Grantor of the trust and Ms. Leahy and Mr. McAnespie were named as co-trustees. Upon death of the last surviving current beneficiary, or sooner, the trust was to be terminated and the property distributed to the Harpswell Heritage Land Trust to be held into perpetuity by said entity. (*See* Plaintiff's Exhibit 9.) On May 13, 2021, Mr. McAnespie was removed as co-trustee of the Miro Family Trust by Ms. Leahy in her capacity as Grantor, which had the express power to revoke, alter, or amend the trust agreement. (*See* Defendant's Exhibit 7.)

6

also using the lower apartment space to cultivate marijuana, a hobby that Ms. Leahy did not share.

In the spring of 2021, the relationship between the parties began to deteriorate. The completion of Ms. Leahy's home at 89 Oakhurst Island Road was delayed which caused strife between the parties as Ms. Leahy was using the lower apartment at 93 Oakhurst Island Road to store fixtures, appliances, and furniture. In May of 2021, Mr. McAnespie sent Ms. Leahy an email instructing her to remove her belongings from the lower apartment on Lot 1. Shortly thereafter, Ms. Leahy attempted to enter the lower apartment and found that the lock had been changed leaving her unable to enter. Eventually the parties were able to come to an agreement allowing Ms. Leahy to remove her belongings from the apartment and place them in a rented storage container that she placed on Lot 2 (the Barn Lot).

The parties attempted to negotiate a separation of their interests in 93 Oakhurst Island Road but could not agree on terms. Mr. McAnespie also believed that he had been tricked with respect to the ownership of Lot 2 (the Barn Lot) which contributed to the parties' inability to amicably divide their interests. On February 7, 2022, Ms. Leahy brought this action for equitable partition of "93 Oakhurst Island Road, Harpswell, Maine, which property is more fully described as Parcel One . . . ." (Complaint ¶ 3.)

Although Mr. McAnespie did not contribute financially to either the purchase prices or the necessary improvements in the septic system or cleanup on the property, he asserts that he played a significant role in property

7

maintenance and, as he termed it, contributed a great deal of "sweat equity."

Ms. Leahy, conversely, financed every cost associated with Lot 1 (93 Oakhurst Island Road), including the pre-purchase diligence, the purchase price, and the post-purchase improvements.

The parties were aware that at the time of closing on the property at 93 Oakhurst Island Road, Maine law required that a new (compliant) septic system to be installed within one year of the closing date.

In 2020, Ms. Leahy secured a home equity line of credit in the amount of $250,000.00. However, she did not initially use that source to pay for the septic system and instead borrowed from her retirement account. Ms. Leahy paid a total of $86,760.25 for the design and installation of the new system. She also caused the necessary variances to be obtained allowing for the system to be installed. Ms. Leahy also paid for the taxes and insurance costs associated with Lot 1 since the date of the closing, for a total of $11,873.00. When it was necessary for Ms. Leahy to repay the drawdowns from her retirement account, she obtained a home equity advance from the home equity line previously obtained from Kennebunk Savings and Loan. On March 28, 2022, Ms. Leahy received $102,822.00 from the home equity line. (*See* Plaintiff's Exhibits 12-22.) As of the time of hearing, Ms. Leahy had paid $14,485.48 in interest payments on the Kennebunk Savings equity loan. (*Id.*)

Mr. McAnespie has exclusively occupied the second-floor apartment at 93 Oakhurst Island Road since March of 2020 and has maintained exclusive possession of the entire building since Ms. Leahy was barred from entry in May

8

of 2021. Ms. Leahy suggested that the fair market rental value of each apartment was $1,200.00 per month. However, both apartments are in poor repair, with the condition of the first-floor apartment inferior to that of the second floor. Mr. Humes acknowledged that it is unlikely that someone would rent the first-floor apartment in the condition that he last observed it. The court finds the fair market rental value of the second-floor apartment to be $850.00 per month.

Ms. Leahy provided testimony that she has the capacity to buy Mr. McAnespie out of the home, which the court accepts as credible. Mr. McAnespie, in his proposed judgment, asked the court to allow him the right to buy out Ms. Leahy. However, no evidence was presented to support his assertion that he has the capacity to buy out Ms. Leahy's interest. The court finds that he has not demonstrated the necessary capacity to buy out Ms. Leahy's interest in the property. Further, the court finds that physical division of the property is not a viable option and the current value of the property is $450,000.

CONCLUSIONS OF LAW: PARTITION

Statutory partition may be carried out only by physical division of the jointly owned real property. 14 M.R.S.A. § 6501; *Libby v. Lorrain*, 430 A.2d 37, 39 (Me.1981). Equitable partition is a more flexible procedure than the statutory action for partition. Remedies may include physical division of the property, ordering a sale of the property, or allowing a buy out of the property. *Id.* Physical

9

division of the property is not appropriate if physical division would materially injure the rights of the parties. *Murphy v. Daley*, 582 A.2d 1212, 1213 (Me. 1990).

The court is not aware of a specific showing that a party seeking a partition needs to make before the court grants a partition. The law that exists suggests a party can obtain a statutory partition merely by asking. 14 M.R.S. § 6501 (parties may be compelled to divide [property] by a civil action for partition); *Hanson v. Willard*, 12 Me. 142, 147 (1835) ("petitioner . . . may claim of right to have partition made and his share set off and divided from the rest, however inconvenient it may be to make such partition, or however much the other co-tenants, or the common property may be injured thereby"); *see also Hoadley v. Wheelwright*, 131 Me. 435, 163 A. 790, 791 (1933) ("The purpose of the statute authorizing partition of real estate is to eliminate by a simple and inexpensive procedure the evils and injustices which often are incident to the holding of land in common or joint tenancy. As the common owners have equal rights in the use and enjoyment of the estate, serious injury is likely to occur to the interests of all if they are not in accord in its management. To meet this difficulty, the statutes provide for a prompt division of their respective interests.") The court sees no reason why the same principle should not apply to an equitable partition.

When ordering a partition, the court may order the sale of the jointly held property and a division of the proceeds. 14 M.R.S. § 6515; *Hutz v. Alden*, 2011 ME 27, ¶ 13, 12 A.3d 1174. The court may also award one party ownership of the property and require that party gaining ownership pay the other parties for

10

his share of the property. *Wicks v. Conroy,* 2013 ME 84,. ¶ 20, 77 A.3d 479. When considering this option, the court will consider all relevant factors including the financial capacity to pay for the other cotenant's interest in the property. *See id* ¶ 21. The court, when fashioning a remedy, should consider whether the court's remedy will prolong a contentious dispute. *See id* ¶ 22.

Each tenant in common is presumed to own an equal share of the property. *Strand v. Velandry,* 2020 ME 38, ¶ 8, 228 A.3d 157. The division of property should take into account all equities growing out of the ownership of the property. *Ackerman v. Hojnowski,* 2002 ME 147, ¶ 11, 804 A.2d 412. Considerations may include payments such as taxes, homeowner's insurance, association dues, etc. as necessary to the ownership of the property. *Palanza v. Lufkin,* 2002 ME 143, ¶ 11, 804 A.2d 1141. They may also include a party's improvements to the property. *Ackerman,* 2002 ME 147, ¶ 12, 804 A.2d 412. The Law Court has said that the court should award the value of the improvements, not the actual cost of the improvement. *Palanza,* 2002 ME 143, ¶ 11, 804 A.2d 1141. On the other hand, the Law Court has also suggested that the court could consider properly proven "time and expenses" incurred if the repairs were intended to prevent waste to the property. *Strand,* 2020 ME 38, ¶ 11, 228 A.3d 157. The court cannot consider personal debts that are not related to the property. *Ackerman,* 2002 ME 147, ¶ 17, 804 A.2d 412.

Although Ms. Leahy contributed all of the purchase price, the court does not allocate that value in its consideration. Ms. Leahy and Mr. McAnespie are joint tenants in 93 Oakhurst Island Road. "As joint tenants, they have an

11

equal, undivided share of the property. This is true even though one joint tenant supplied 100% of the purchase price. To consider [the parties'] relative contributions to the initial acquisition of the property would defeat joint ownership." *Ackerman*, 2002 ME 147, ¶ 11, 804 A.2d 412 (quotations and citations omitted).

A joint tenant is not entitled to additional compensation in a partition action for expenditures of time or money over the years for improvements and maintenance where he had the benefit of exclusive possession. *Rinehart v. Shubel*, 2002 ME 53, ¶ 11, 794 A.2d 73. A party cannot seek compensation for the other party's occupation of the premises unless they can prove the reasonable amount of rent. *Strand*, 2020 ME 38, ¶ 13, 228 A.3d 157. Otherwise, the balancing of the equities allows the court to consider all relevant equitable considerations. *Libby v. Lorrain*, 430 A.2d 37, 40 (Me. 1981).

The court has considered the value of Mr. McAnespie's contribution to the home. However, the court does not weigh the expenditures and efforts he made while living in the home because they are offset by his use of the home. The court also considers compensation based on his use of the home at fair market rental value of $850.00 per month.

Based on the evidence, the court finds that Ms. Leahy has paid a disproportionate (nearly exclusive) share of expenses for 93 Oakhurst Island Road. Specifically, the court finds Ms. Leahy's post ownership contributions as follows: improvement on the property to be $86,760.00; interest on the mortgage totaling $14,485.48 (plus any additional interest paid after the

12

hearing date of April 24, 2024); real estate taxes and insurance totaling $11,873.00 (plus any additional interest paid after the hearing date of April 24, 2024); and fair rental value for 49 months totaling $41,650.00 (plus an additional $850.00 per month for all subsequent months of Defendant's occupation of the property). The total offset amount being $142.895.48 plus any additional interest, insurance, taxes and additional monthly rental as outlined above.

Thus, for the purposes of partition, the court begins its analysis with each party an equal share of the value of the property but then offsets Ms. Leahy's subsequent contributions from Mr. McAnespie's share. Applying these principles to the facts of this case, the court determines that the value of the equity to be divided between Ms. Leahy and Mr. McAnespie is $307,104.52 (less appropriate costs outlined above). Each party's share is approximately $153,552.26.

Therefore, given the court's finding that Ms. Leahy has the capacity to do so, the court orders as follows:

Ms. Leahy has thirty days from the date of this judgment to purchase Mr. McAnespie's interest in the property by paying him for his share, the sum of $153,552.26 less any additional mortgage interest, insurance, taxes and additional monthly rent calculated as outlined above. Once payment is delivered to Mr. McAnespie, he will execute a quitclaim deed to Ms. Leahy.

13

If Ms. Leahy is unable to buy Mr. McAnespie's share, then the property will be ordered sold. Mr. McAnespie's share will be one half of the net proceeds of sale less the offsets to Ms. Leahy specifically outlined above.

## MONEY OWED AND UNJUST ENRICHMENT COUNTS

Mr. McAnespie asserts in his counterclaims that Ms. Leahy has been unjustly enriched by the work he performed on lot 2 (the Barn Lot). Additionally, he seeks payment for money owed pursuant to the "partnership agreement." To prevail under the equitable principle of unjust enrichment, Mr. McAnespie must prove three elements: first, that a benefit has been conferred upon Ms. Leahy by Mr. McAnespie; second, an appreciation or knowledge by Ms. Leahy of the benefit; and third, that Ms. Leahy's "acceptance or retention of the benefit was under such circumstances as to make it inequitable for [her] to retain the benefit without payment of its value." *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707.

Based on the evidence presented, with consideration given to the credible testimony of witness Mike Christie, the court finds that Mr. McAnespie failed to satisfy his burden of proof relative to the unjust enrichment counterclaim. Specifically, the court does not find that he sufficiently demonstrated that he conferred a benefit upon Ms. Leahy; nor does the court find that Ms. Leahy had an appreciation or knowledge any benefit under the circumstances of this case.

With respect to the claim for money owed the court does not find that a contract was made between the parties for payment by Ms. Leahy to Mr. McAnespie for work done at the rate of $50 per hour, nor for him to remove

14

debris or other items and transport such to the Harpswell Transfer Station. Further, the evidence presented was insufficient for the court to determine that the receipts from the Transfer Station were for items that Ms. Leahy knew of or agreed to reimburse for. The court enters judgment for Ms. Leahy on both counterclaims.

### CONCLUSION

Based on the evidence adduced at trial and pursuant to Maine law, it is hereby ORDERED as follows:

Plaintiff's request for partition is granted. Plaintiff is ordered to buy out Defendant's ownership interests consistent with the terms of this Order.

Judgment shall enter in favor of counterclaim Defendant on the counts of Money Owed and Unjust Enrichment.

Dated: July 26, 2024

Deborah P. Cashman
Justice, Maine Superior Court

Entered on the Docket: 07/29/2024

15